IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-170RLV

| | |
|---|---|
| LANSTON TANYI, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| APPALACHIAN STATE UNIVERSITY, | ) **ORDER AND MEMORANDUM** |
| UNIVERSITY OF NORTH CAROLINA, | ) |
| CINDY A. WALLACE, in her individual and | ) |
| official capacities, | ) |
| JUDITH HAAS, in her individual and official | ) |
| official capacities, and | ) |
| LORI S. GONZALEZ, in her individual and | ) |
| official capacities, | ) |
| | ) |
| **Defendants.** | ) |

**THIS MATTER** is before the Court on a Motion to Dismiss on the grounds of qualified immunity, and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 30).

**I. BACKGROUND FACTS**

Lanston Tanyi ("Tanyi"), an African-American male, enrolled at Appalachian State University on a football scholarship in the fall of 2008. (2d. Am. Compl. ¶¶ 8, 10). On September 14, 2011, Tanyi attended an off-campus party where alcohol was served. (*Id.* ¶ 16). Tanyi and his roommate went into an upstairs bedroom with Student A, whom Tanyi did not previously know, and the trio had sex. (*Id.* ¶¶ 17-18).

On September 19, 2011, Tanyi and his roommate received letters from the Appalachian State Dean of Students, ordering them to have "no contact" with Student B. Student B claimed to have been raped by Tanyi, his roommate, and three other "big and black" athletes in April. (*Id.*

1

¶¶ 35-36). On September 23, 2011, Tanyi was informed by Defendant Haas[1] that he was being charged with various violations of the student code of conduct stemming from rape allegations made by both Student A and Student B, including sex offenses, sexual misconduct, harassment and hostile communications. (*Id.* ¶ 39). Tanyi's disciplinary hearing, and that of his roommate, regarding Student A's allegations was set for October 18, 2011. (*Id.* ¶ 55).

At the October 18 hearing, Defendants Wallace and Haas assigned Tanyi a philosophy graduate student with no legal expertise as his defense counsel. Student A was assigned a licensed attorney. (*Id.* ¶ 57). Although Tanyi presented several potential witnesses with prepared written statements to Wallace and Haas, the administrators permitted only a student who walked in on Tanyi's sexual encounter with Student A to testify on behalf of Tanyi. (*Id.* ¶ 61). Tanyi also contends that Wallace and Haas knew of two potential witnesses that would corroborate Tanyi's version of events, but did not inform Tanyi of the existence of these witnesses. (*Id.* ¶¶ 85-86). The hearing panel found against both Tanyi and his roommate (their cases were decided together), and Tanyi was suspended for eight (8) semesters. (*Id.* ¶¶ 64-65). At the hearing, Tanyi learned for the first time that his roommate had prior disciplinary violations, and later discovered that one of the jurors on the hearing panel had decided an earlier case against his roommate. (*Id.* ¶¶ 64, 68).

Tanyi appealed the panel's decision, and his appeal was denied by a committee selected by Wallace. (*Id.* ¶ 70). Tanyi spoke with the Chancellor of Appalachian State in early November, and the Chancellor told Tanyi that he would look into the matter. On November 18, 2011, Wallace granted Tanyi a new hearing regarding Student A's allegations, stating that Tanyi had

---

[1] According to Tanyi's Second Amended Complaint, at all times relevant to the complaint Defendant Judith Haas was the Director of the Office of Student Conduct at ASU, Defendant Cindy Wallace was the Vice Chancellor of Student Development at ASU, and Defendant Lori Gonzalez was the Provost and Executive Vice Chancellor at ASU. (2d. Am. Compl. ¶¶ 4-6).

been denied his right to a hearing separate from his roommate. (*Id.* ¶¶ 71-72). On January 27, 2012, a hearing was held regarding student B's allegations, and the panel found in favor of Tanyi. (*Id.* ¶ 78).

Following Tanyi's exoneration by the Student B panel, Student A posted a message on Facebook naming Tanyi and his roommates as rapists, and alleging that Appalachian State was attempting to protect them because they were football players. The post garnered statewide media attention. (*Id*. ¶ 79-80). Student B appealed the panel's ruling, and on March 9, 2012, Defendant Gonzalez granted Student B's appeal. (*Id.* ¶¶ 84, 89). At the new Student B hearing, Student B also accused Tanyi of harassing her on campus, in addition to the original allegations. (*Id.* ¶ 97). Tanyi alleges he was not informed of the new harassment charge until the night before the hearing, and had no time to prepare witnesses to rebut the charge. (*Id.* ¶ 98). On March 29, 2012, the panel cleared Tanyi of Student B's sexual misconduct allegations, but did find Tanyi responsible for the new charge of harassment. (*Id.* ¶ 102).

On April 18, 2011, Tanyi's appeal of Student A's rape allegations was heard. (*Id.* ¶ 106). For the appeal, Student A also added a charge of harassment to her original allegations. (*Id.*) The panel found in favor of Tanyi on all charges. (*Id.* ¶ 114). Tanyi graduated from Appalachian State in the summer of 2012. (*Id.* ¶ 121). He enrolled in a graduate program at Colorado State University and used his final year of football eligibility at Colorado State. (*Id.*) Tanyi was not drafted by any NFL team, and is not currently on any NFL roster. Tanyi brought this suit on February 24, 2015, alleging violations of his Fourteenth Amendment procedural due process, substantive due process, and equal protection rights under 42 U.S.C. § 1983, as well as gender discrimination in violation of 20 U.S.C. § 1681.

II.     **STANDARD OF REVIEW**

A Rule 12(b)(6) motion is a defense to a claim for relief and provides for dismissal where a party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the facts alleged must be sufficient "to raise a right to relief above the speculative level" and state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 564 (2007). A district court reviewing a Rule 12(b)(6) motion "assumes all well-pled facts to be true" and "draw[s] all reasonable inferences in favor of the [non-moving party]." *Tasz, Inc. v. Industrial Thermo Polymers, Ltd.*, 2015 WL 268500, at *5 (W.D.N.C. 2015). However, a reviewing district court comes to its own legal conclusions based on the facts and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citations and quotations omitted).

### III. DISCUSSION

#### A. Section 1983 Procedural Due Process Claim

In order to state a § 1983 claim based on procedural due process, Tanyi must first demonstrate that he has been deprived of a cognizable liberty or property interest under the Fourteenth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). The Court must then determine whether the procedures employed to effect this deprivation were constitutionally adequate. *Id*. The Court assumes that students at public universities maintain protected property interests in their continued enrollment. *See Cobb v. The Rector and Visitors of the Univ. of Va.*, 69 F. Supp. 2d 815, 826 (W.D.Va. 1999); *Henson v. Honor Committee of Univ. of Va.*, 719 F.2d 69, 73 (4th Cir. 1983). Students facing school discipline also possess a liberty interest in their reputations. *See Goss v. Lopez*, 419 U.S. 565, 576 (1975). Citing *Tigrett v. Rector and Visitors of the Univ. of Va.*, Defendants claim Tanyi cannot base valid procedural due process claims on

procedures that led to his exoneration. (Doc. 31, p. 11; 290 F.3d 620, 627-28 (4th Cir. 2002)). Defendants, however, mischaracterize the holding in *Tigrett*. In that case, although a student disciplinary panel recommended the defendants for expulsion, the University Vice President refused to ratify the panel's recommendation. The defendants in *Tigrett* never had their enrollment discontinued, and were not prevented from attending classes. *Id.* The Fourth Circuit found no procedural due process violation in *Tigrett* because no actual deprivation occurred, not because the defendants were ultimately exonerated. *Id.* Tanyi, by contrast, served multiple lengthy suspensions pursuant to ASU's allegedly flawed student disciplinary procedures. (2d. Am. Compl. ¶¶ 65, 89).

The question before the Court, then, is whether the procedures used to suspend Tanyi provided him sufficient due process to satisfy the Fourteenth Amendment. In the student disciplinary context, procedural due process minimally requires notice and an opportunity to be heard. *See Goss*, 419 U.S. at 579. Further, fundamental fairness requires that the hearing take place "at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 492 U.S. 319, 333 (1976). Although a full-scale trial is never required in student disciplinary proceedings, the level of procedural protection necessary "depends on three variables: 1) the nature of the interest protected; 2) the danger of error and the benefit of additional or other procedures; and 3) the burden on the government such procedures would present." *See Matthews,* 492 U.S at 321. Thus, whether due process has been satisfied in a particular student hearing is heavily context-dependent. Tanyi points to seven separate actions taken by the defendants which he claims violated his procedural due process rights. The Court will address each in turn.

> **1.) Defendants Haas and Wallace excluded Tanyi's proffered witnesses from testifying at the first Student A hearing**

5

Tanyi's first claimed due process violation concerns the exclusion of testimony from several character witnesses Tanyi intended to call, largely regarding Student A's sexual history, and from whom he had obtained written statements. None of the excluded witnesses were eyewitnesses, although one, who had allegedly been dating Student A, intended to testify that Student A had previously performed oral sex on himself and three other males on the night of her encounter with Tanyi. Student A's field hockey teammate, who entered the room during Student A's sexual encounter with Tanyi, was permitted to testify.

Federal Rule of Evidence 412 (b)(2) provides that, for civil cases, a court may only admit evidence "offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim." Fed. R. Evid. 412 (b)(2). Although the Federal Rules of Evidence do not apply to student disciplinary proceedings, the additional burdens they impose on testimony concerning sexual history weighs against deeming Defendants' decision to exclude such testimony a violation of procedural due process.

Regarding the proffered testimony of Student A's alleged boyfriend, the scheme of Rule 412 limits "evidence of specific prior acts . . . to directly probative evidence." *United States v. Saunders*, 943 F.2d 388, 391 (4th Cir. 1991). Although Student A's alleged boyfriend intended to testify about Student A engaging in group sexual acts earlier in the evening on the night in question, he had no firsthand knowledge of Student A's encounter with Tanyi. Haas and Wallace's decision to allow testimony only from the student who witnessed Tanyi's encounter with Student A is defensible as an effort to eliminate testimony regarding sexual history from the proceeding. As such, it does not give rise to a cognizable procedural due process claim.

### 2.) Tanyi was assigned a philosophy graduate student as defense counsel, while Student A was assigned a licensed attorney

6

The Due Process Clause does not necessarily require that students facing expulsion be represented by licensed attorneys. *See Henson*, 719 F.2d at 74 (the right to a practicing attorney is "not a right generally available to students facing disciplinary charges"); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("at most the student has the right to get the advice of a lawyer; the lawyer need not be allowed to participate in the proceeding"). The crux of Tanyi's claim, however, concerns the fairness of assigning a graduate student to Tanyi, while providing a licensed attorney to Student A.

In determining whether or not this discrepancy amounts to a due process violation, the balancing test from *Matthews* is instructive. The test looks at the interest protected, the danger of error without additional procedures, the potential benefits of implementing such procedures, and the burden such procedures would place on the government. *See Matthews,* 492 U.S. at 321. Here Tanyi faced expulsion, so his interest was substantial. The danger of error and the potential benefits to be gained from providing Tanyi with an attorney, however, seem relatively minimal. Although the record is not explicit, the only apparent role played by counsel at Tanyi's hearing was to call and examine witnesses. No intricate knowledge of the law or extensive legal training was required. Finally, the burden placed on Appalachian State, if required to provide counsel to every student facing expulsion, would be substantial. Any counsel provided to Tanyi would need to come from outside the University to avoid a conflict of interest, and thus would impose a significant financial burden on Appalachian State. On balance, Tanyi's claim regarding his lack of a licensed attorney appointed by ASU does not survive Defendants' Motion to Dismiss.

### 3.) **Appalachian State did not advise Tanyi of his right to a separate hearing**

Deviation from stated internal policies does not equate to a denial of due process. *See Jones v. Bd. Of Governors of Univ. of NC*, 704 F.2d 713, 717 (4th Cir. 1983). However, "to the extent a state's procedures directly embody fundamental guarantees grounded in the due process clause, a significant departure" from those procedures can constitute a denial of procedural due process. *Id.* The question, then, is not whether Defendants deviated from ASU policy by failing to provide Tanyi with a separate hearing (they admit as much), but whether the lack of a separate hearing provided constitutionally inadequate due process.

Under Federal Rule of Criminal Procedure 14(a), if the joinder of defendants appears to prejudice a defendant, the court may sever the defendants' trials. (Fed. R. Crim. P. 14(a)).[2] However, severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539 (1993). Further, "a defendant is not entitled to severance merely because he might have a better chance of acquittal in a separate trial." *United States v. Verges*, 997 F.Supp. 2d. 398, 404 (E.D. Va. 2014). Here, Tanyi was tried together with his roommate, who had previous disciplinary violations on his student record. The panel that found Tanyi responsible for sexually assaulting Student A knew of these prior violations, and read out Tanyi's roommate's disciplinary record prior to announcing its decision. (2d. Am. Compl. ¶ 64). Although Tanyi might have benefited from a separate trial, "the mere showing of prejudice is not enough to require severance." *United States v. Hayden*, 85 F.3d 153, 160 (4th Cir. 1996). In any event, the panel's knowledge of his roommate's prior record did not seriously jeopardize its ability to sit in reliable judgment of Tanyi's case. Accordingly, Tanyi's claim will not survive Defendants' Motion to Dismiss.

---

[2] By citing the Federal Rules of Criminal Procedure, the Court does not imply that they are at all events applicable in the context of student disciplinary hearings. They may be utilized for guidance.

### 4.) Defendants did not inform Tanyi that a member of his hearing panel had previously found against Tanyi's co-defendant in a prior proceeding

Tanyi next contends that a biased panel member tainted the result in his first Student A hearing. Juror impartiality is "not a technical conception. It is a state of mind. For the ascertainment of this mental attitude…the Constitution lays down no particular tests and procedure is not chained to any . . . formula." *Irvin v. Dowd*, 366 U.S. 717, 724-25 (1961) (*citing United States v. Wood*, 299 U.S. 123, 145-46 (1936)). Further, jurors are presumed impartial, and the existence of preconceptions regarding guilt or innocence in the mind of a juror is not enough to rebut this presumption. *Id.* at 723. In *Poynter by Poynter v. Ratcliff*, a medical malpractice case, the Fourth Circuit ruled that the district judge did not err in refusing to excuse two jurors for bias. 874 F.2d 219, 221. One of the jurors was the defendant doctor's patient, and the other was herself a defendant in a medical malpractice suit. *Id.* Given that student disciplinary proceedings are subject to lower procedural standards than full-scale trials, as well as the precedent set by *Poynter*, Tanyi's claim for bias does not survive Defendants' Motion to Dismiss.

### 5.) Wallace failed to inform Tanyi of the existence of two potentially exculpatory witnesses

Tanyi argues that his procedural due process rights were further violated when Wallace failed to notify him that, in the days following Student A's rape allegation, but before Tanyi's hearing, two witnesses potentially favorable to Tanyi went to Wallace's office unprompted, and informed her that they did not believe Student A was raped. (2d Am. Compl. ¶ 53). These two students watched Student A engage Tanyi and his roommate in conversation, and lead them into the bedroom. *Id.* Tanyi further alleges the two students spoke to Student A in the bedroom immediately following her sexual encounter with Tanyi, and that Student A was not upset. *Id.*

In a series of opinions beginning with *Brady v. Maryland*, the Supreme Court clarified the circumstances under which a prosecuting official is required to disclose potentially exculpatory evidence. *See, e.g.*, 373 U.S. 83 (1963); *United States v. Agurs*, 427 U.S. 97 (1976); *United States v. Bagley*, 473 U.S. 667 (1985). In *Brady*, the Court held that suppression of exculpatory evidence by the prosecution "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87 (1963). However, the Supreme Court "never stated that the *Brady* rule applies in civil cases," *Demanjuk v. Petrovsky*, 10 F.3d, 338, 353 (6th Cir. 1993), and this Court is aware of no Fourth Circuit case law extending the rule to civil matters, much less student disciplinary proceedings. In essence, Tanyi wishes to apply the standards of *Brady* disclosure, developed for federal criminal proceedings, to a university student conduct hearing. Such a standard would be wholly without precedent, and this Court declines to adopt it. As a result, Tanyi's claim will not survive Defendants' Motion to Dismiss.

### 6.) <u>No legitimate reason existed for granting the second Student B hearing</u>

Tanyi further claims his procedural due process rights were violated by Defendants' decision to re-hear Student B's sexual assault allegations. The Fifth Amendment provides, in part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. Amend. V. Although the double jeopardy clause does not apply to the student disciplinary context, the due process clause in all cases requires "fundamentally fair procedures." *Goss*, 419 U.S. at 565.

In defending their decision to re-hear Student B's allegations, Defendants attach a "Dear Colleague" letter prepared by the United States Department of Education. (Doc 31-1).[3] The Court may take judicial notice of the "Dear Colleague" letter, as it is well established that "a [c]ourt may consider and take judicial notice of matters of public record when considering a motion to dismiss." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

According to the letter, federal regulations require that, if universities provide an appeals process for sexual assault cases, both parties must be allowed to appeal. (Doc 31-1, p. 12). The right to appeal is not equivalent to the right to a new hearing, however. In civil proceedings, although "the trial judge must be allowed wide discretion in granting a new trial," new trials should only be ordered "if the verdict is against the clear weight of the evidence…or substantial errors occurred during the proceedings." *Ford Motor Credit Co. v. Minges*, 473 F.2d 918, 923 (4th Cir. 1972); *Whelan v. Abell*, 939 F. Supp. 44, 46 (D.D.C. 1996). Thus, a clearly articulated substantive basis must exist for granting a new trial. Otherwise, as Tanyi argues, ASU could simply order a new misconduct trial whenever the university did not prevail– which is exactly what is alleged here. (Doc. 34, p. 15-16).

Defendant Gonzalez failed to articulate a legitimate reason for re-hearing Student B's rape allegations. In her letter to Tanyi, Gonzalez essentially wrote that a second hearing was necessary because ASU did not adequately prove its case against him at the first hearing. (2d. Am. Comp. ¶ 90). Such reasoning is a plainly inadequate basis for granting a new hearing, and fundamentally unfair to Tanyi. Accordingly, Tanyi's claim regarding the decision to re-hear Student B's rape allegations will survive Defendant's Motion to Dismiss.

---

[3] The letter is published on the U.S. Department of Education Office for Civil Rights' website. U.S. DEP'T OF EDU. *Dear Colleague Letter* (Apr. 4, 2011), *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html.

### 7.) Tanyi's allegations regarding inadequate notice of Student B's new harassment charge survive dismissal

The essence of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Matthews*, 492 U.S. at 333. Tanyi learned of Student B's additional harassment charge the night before the second hearing, after he had designated his witnesses. (2d Am. Compl. ¶ 97-98). In *Tigrett v. Rector and Visitors of the Univ. of Va.*, the defendants were informed of a disorderly conduct charge at least 48 hours prior to their hearing, although the "new" charge was effectively a lesser included of another charge they already knew about. 137 F. Supp. 2d 670, 679 (W.D. Va., 2001). It strains credulity to argue, as Defendants contend, that the decision in *Tigrett* can be comfortably extended to cover Tanyi's situation. For all intents and purposes, Tanyi received notice of the new harassment charge at the eleventh hour, when it was too late to mount an effective defense. Educational institutions are largely left to their own devices regarding student disciplinary proceedings. However, at a minimum due process requires adequate notice. *See Goss*, 419 U.S. at 579 (1975). Because Tanyi received less than 24 hours' notice of a new charge, this allegation will survive Defendants' Motion to Dismiss.

### B. Section 1983 Substantive Due Process Claim

In order to state a § 1983 claim based on substantive due process, Tanyi must demonstrate that Gonzalez' actions in granting Student B's appeal amounted to an arbitrary abuse of executive power so egregious that it "shocks the conscience." *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Further, Tanyi must have suffered a deprivation resulting from the substantive due process violation. *See McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 945 (M.D.N.C. 2011). Regarding the deprivation requirement, Defendants contend that Tanyi cannot bring a substantive due process claim for the re-opening of Student B's rape allegations because he was eventually exonerated on those charges. Tanyi, however, was suspended for twenty days

while awaiting the second Student B hearing, thus suffering a deprivation. (2d Am. Compl. ¶¶ 89, 96). His eventual exoneration of the rape allegations has no bearing on Tanyi's ability to bring a claim for the re-opening of those charges. The critical inquiry, then, is whether Gonzalez' decision to grant Student B's appeal was arbitrary and shocking to the conscience.

The Supreme Court has repeatedly held that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Cnty. of Sacramento*, 523 U.S. at 846 (1998) (quoting *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 129 (1992)). Further, "conduct intended to injure in some way unjustifiable by any governmental interest" is most likely to rise to the conscience-shocking level. *Id.* at 849. In the student disciplinary context, a student must show that a university official's decision lacked any rational basis, or "was motivated by ill will or bad faith." *Tigrett*, 137 F. Supp. 2d 670, 678 (W.D. Va. 2001).

Tanyi alleges that Gonzalez acted arbitrarily and in bad faith, motivated solely by the negative publicity generated by Student A's Facebook post. (2d Am. Compl. ¶ 135). Defendants contend that Gonzalez' actions do not shock the conscience, and were neither arbitrary nor unjustifiable, pointing to the Department of Education's "Dear Colleague" letter on Title IX, which directs universities to allow appeals by both parties in sexual assault cases. (Doc. 31-1 p. 12). The Department of Education does not dictate, however, that new hearings be granted in all cases. Indeed, beyond the unusual contention that a second hearing was required because ASU did not adequately prove its case against Tanyi, Gonzalez provided no reasoning for her decision to grant a re-hearing of Student B's rape allegations. (2d. Am. Comp. ¶ 90).

Although "it is not the role of the federal courts to set aside decisions of school administrators…lacking a basis in wisdom or compassion," a decision may nevertheless be "so extreme as to violate due process." *Wood v. Strickland*, 420 U.S. 308, 326 (1975); *Board of*

*Education v. McCluskey,* 458 U.S. 966, 970 (1982). In *Evans v. Bd. of Regents of West* Virginia, for example, a medical student was granted a medical leave of absence for one year, but, upon reapplying, was refused re-admittance without any explanation whatsoever. 165 W.Va. 780, 781 (1980). There, the court found a violation of the plaintiff's due process rights. Taking Tanyi's allegations as true, Gonzalez' decision here was similarly arbitrary, and motivated by bad faith. As a result, Tanyi's substantive due process claim will survive Defendant's Motion to Dismiss.

### C. Section 1983 Equal Protection Claim

In order for his equal protection claim to survive a motion to dismiss, Tanyi "must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dept. of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011); (citing *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Further, Tanyi's alleged facts must amount to more than a "formulaic recitation of the elements" of his cause of action to be entitled to the presumption of truth. *Bell Atl. Corp.*, 550 U.S. at 545.

Regarding the first prong that an Equal Protection claim must satisfy, unequal treatment of those similarly situated, Tanyi alleges that no female student and no white student facing expulsion for misconduct has been treated similarly by ASU. (2d Am. Compl. ¶ 146). In *Nofsinger v. Virginia Commonwealth Univ.*, the plaintiff, who was dismissed from her graduate physical therapy program for academic reasons, alleged that, "[d]uring the same time period relevant to [the plaintiff], at least three and…as many as six or more other students similarly situated" faced VCU's dismissal procedures, and none had their due process rights violated in a manner similar to the plaintiff. 2012 WL 2878608, at *9 (E.D. Va. July 13, 2012) *aff'd,* 523 F. App'x 204 (4th Cir. 2013). There, the court dismissed the equal protection claim, finding the

plaintiff "offer[ed] an allegation, but fail[ed] to plead any facts whatsoever, with respect to how the three to six students described in her Complaint were similarly situated to her." *Id.*

Here, Tanyi alleges even fewer facts than the plaintiff in *Nofsinger*, offering only conclusory generalizations that no female or white student has been treated similarly. Without more, this claim does not rise above a "formulaic recitation of the elements." Moreover, Tanyi's complaint fails to demonstrate that his allegedly unequal treatment resulted from a "discriminatory animus." Other than noting that Tanyi is an African-American male attending college in the South, Tanyi's complaint contains nothing, besides an offhand remark from Haas concerning Tanyi's clothing, to indicate racial or gender bias. (2d. Am. Comp. ¶ 144). As a result, Tanyi fails to state a valid Equal Protection claim.

### D. Qualified Immunity

Qualified immunity protects government officials from monetary damages in a suit brought under 42 U.S.C. § 1983, so long as their conduct does not violate any clearly established constitutional or statutory rights of which a reasonable person would have been aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, the Supreme Court noted the proper progression of a court's qualified immunity analysis:

> The first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered.

533 U.S. 194, 200 (2001). The Court has found that two of Tanyi's procedural due process claims will survive Defendants' Motion to Dismiss: Defendants' failure to provide Tanyi with adequate notice of Student B's harassment allegations, and the decision to reopen Student B's rape allegations without a legitimate basis for doing so. The Court has also found that Tanyi's

substantive due process claim will survive Defendants' Motion to Dismiss. Per *Saucier*, the Court now examines whether these actions constituted violations of clearly established rights.

In order for a right to be clearly established, "every reasonable official" who transgresses the right "must have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). A case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* According to the Supreme Court, the qualified immunity doctrine protects "all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Regarding the short notice Tanyi received of Student B's harassment allegations, "the essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Matthews*, 492 U.S. at 348 (citation omitted). Providing Tanyi with less than 24 hours' notice of an entirely new charge, after he had submitted his list of proposed witnesses, did not provide Tanyi with adequate notice, and violated a clearly established right that Defendants should have been aware of. Therefore, concerning the short notice Tanyi received of Student B's new harassment allegation, Defendants' Motion to Dismiss on grounds of qualified immunity is denied.

Regarding Tanyi's procedural due process claim based upon Defendants' decision to re-hear Student B's rape allegations without providing adequate justification, the Court will hear additional arguments at summary judgment concerning whether Defendants' actions violated a clearly established right.

Given that Tanyi's substantive due process claim is based upon the same action, re-hearing Student B's rape allegation, the Court will also hear additional arguments from the parties at summary judgment regarding this claim.

### E. 20 U.S.C. § 1681 (Title IX) Claim

20 U.S.C. § 1681 (commonly referred to as Title IX), states, in pertinent part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a). Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2nd Cir. 1994). Tanyi's Title IX claim is virtually identical to his equal protection claim, alleging that no female ASU student facing discipline for misconduct has been treated in a manner similar to Tanyi. (2d. Am. Compl. ¶ 152). In support of his claim, Tanyi cites *Yusuf*, a Second Circuit case that also involved an educational institution's handling of sexual assault allegations. (Doc. 34, p. 23). There, the court allowed the plaintiff's Title IX claim to survive because he alleged that male students at Vassar College were "historically and systematically" and "invariably found guilty, regardless of the evidence." *Yusuf*, 35 F.3d at 716 (1994). As the court noted in *Doe v. Columbia Univ.*, however, *Yusuf* was decided in 1994, long before the *Twombly* and *Iqbal* standards came into effect. 2015 WL 1840402, at *13 (S.D.N.Y. 2015). Since the Supreme Court clarified the pleading standards, "the Court is no longer required to consider as true— and, in fact, for the purposes of evaluating the Complaint's sufficiency, is compelled to disregard" allegations "devoid of factual support." *Id.*

Tanyi also cites *Wells v. Xavier University,* another case in which a male student's Title IX claim survived a 12(b)(6) motion to dismiss. (Doc. 34, p. 24; 7 F. Supp. 3d 746 (S.D. Ohio, 2014)). In *Wells*, the plaintiff claimed he was scapegoated by the Xavier administration, which was already under fire for mishandling two previous sexual assault claims against male students, "because he was a male accused of sexual assault." *Wells,* 7 F. Supp. 3d at 751 (2014). However,

as the Southern District of New York noted in *Doe*, "that sort of subjective belief, devoid of factual support, is plainly insufficient after *Iqbal* and *Twombly*." 2015 WL 1840402, at *14 (S.D.N.Y. 2015). Accordingly, the Court declines to follow the *Wells* ruling. Thus, given the lack of factual support for Tanyi's allegations, his Title IX claim will not survive Defendants' Motion to Dismiss.

F. **Limitation of Damages**

Defendants' argue that Tanyi's damages should be limited to exclude any lost income from a potential professional football career. Tanyi is not seeking damages for a lost NFL career, however. The Second Amended Complaint alleges only that Tanyi's invitation to the Carolina Panthers' training camp was rescinded once the Panthers learned of the allegations made against Tanyi while at Appalachian State. (2d. Am. Compl. ¶ 123). This is a specific lost opportunity that Tanyi can point to, rather than a speculative career, and Tanyi is entitled to whatever damages he can prove. *See Wofford v. Evans*, 2002 WL 3295799, at *9 (M.D.N.C. 2002). At this stage, the Court is not prepared to make a ruling regarding the limitation of damages.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss (Doc. 30) be **GRANTED** in part and **DENIED** in part. Plaintiff's 42 U.S.C. § 1983 procedural due process claims (III)(A)(1)-(5), as well as Plaintiff's 42 U.S.C. § 1983 equal protection claim and 20 U.S.C. § 1681 (Title IX) claim, are hereby **DISMISSED**. Plaintiff's 42 U.S.C. § 1983 procedural due process claim (III)(A)(7) may proceed to summary judgment. The Court will hear additional arguments at summary judgment regarding Plaintiff's 42 U.S.C. § 1983 procedural due process claim (III)(A)(6) and 42 U.S.C. § 1983 substantive due process claim.

Signed: July 22, 2015

Richard L. Voorhees
United States District Judge